# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

RANDY J. HANSELL,               :

    Plaintiff,              :

vs.                             :    CA 06-0182-BH-C

JO ANNE B. BARNHART,            :
Commissioner of Social Security,
                                :
    Defendant.

## **REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. This action is before the Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, plaintiff's proposed report and recommendation, the Commissioner's proposed report and recommendation, and the parties' arguments at the October 25, 2006 hearing before the Magistrate Judge, it is recommended that the decision to deny benefits be reversed and remanded for further proceedings not inconsistent with this

decision.

Plaintiff alleges disability due to status-post left knee meniscectomy, lumbar strain, and mental retardation. The Administrative Law Judge (ALJ) made the following relevant findings:

> 4. The claimant had the following "severe" medically-determinable impairments during the period of adjudication: status post left knee meniscectomy, lumber strain, and borderline intellectual functioning (estimated). The undersigned carefully considered a right knee impairment, but found it to be nonsevere, over any applicable full 12 months, during the period of adjudication.
>
> 5. No single medically-determinable impairment, or combination thereof, had the specific or equivalent severity of medical findings necessary to establish presumptive disability under the evaluative standards found in Appendix 1 of the Regulations during the period of adjudication.
>
> 6. The claimant's testimony of subjective complaints and functional limitations, where inconsistent with the residual functional capacity of this decision, was not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility. The claimant's receipt of unemployment compensation benefits, the claimant's inconsistent statements of record, the weight of the medical opinion evidence of record, and the findings of malingering by two qualified psychologists all adversely affected the claimant's credibility concerning alleged work-related limitations.
>
> 7. During the period of adjudication, the claimant retained the physical residual functional capacity to perform at least a wide range of light to sedentary levels of exertion that would involve lifting no more than 25 pounds on an occasional basis; no limitation on sitting; standing for 1 hour at a time and up to

a total of 4 hours on a given workday; walking for 1 hour [at a time] and up to a total of 4 hours on a given workday; and only occasional climbing, balancing, stooping, kneeling, crouching, crawling, and working in high, exposed places. The claimant had mild to at most moderate limitations in his ability to use judgment in detailed or complex work-related decisions; understand, remember, and carry out detailed or complex instructions; and maintain attention, concentration, or pace for periods of at least two hours. Additionally, he had mild limitations in his ability to respond appropriately to supervisors; respond appropriately to co-workers; respond appropriately to customers or other members of the general public; use judgment in detailed or complex work-related decisions; use judgment in simple, one-or two-step work-related decisions; deal with changes in a routine work setting; understand, remember, and carry out simple, one-and two-step instructions; maintain social functioning; and maintain activities of daily living. In arriving at this residual functional capacity, the undersigned found the opinions of Drs. Allen, Davis, and McCleary (Exhibits 16-F, 17-F, and 20-F) to have been the most reliable and probative for assessment of the claimant's work-related abilities throughout the period of adjudication. The undersigned also found the specific work-related physical restrictions of Dr. Hudgens to be consistent with the above physical residual functional capacity when given in his workers' compensation deposition.

8. To the extent that alcohol or substance abuse/addiction, if any, was a part of the claimant's medical history pertaining to the period of adjudication, the effects of such were not considered in the determination of residual functional capacity (20 C.F.R. 404.1535/416.935).

9. During the period of adjudication, the claimant presumably was unable to perform any category of his past relevant work.

10. The claimant was a "younger individual age 18-44" during the period of adjudication.

11.     The claimant presumably received a "high school certificate" after 12 years of schooling which may have included special education classes. The impartial vocational expert at the hearing classified the claimant's educational level as "illiterate to possibly marginal." However, whether the claimant attended special education classes and whether the claimant could be deemed illiterate, as defined within the Regulations, has been "immaterial" to the outcome of this case under the Medical-Vocational Guidelines of Appendix 2 of the Regulations.

12.     The claimant's past relevant work was "semi-skilled" and "unskilled" in nature, but, during the period of adjudication, the transferability of past acquired work skills under the Medical-Vocational Guidelines was "immaterial" to the outcome of this case.

13.     Considering the claimant's vocational factors and residual functional capacity, vocational rules 202.16, 202.17, 202.18, 202.19, 201.23, 201.24, 201.25 and 201.26 of the Medical-Vocational Guidelines (Appendix 2) provided a framework for decisionmaking within the period of adjudication. Within that framework, it is concluded that the claimant was able to perform representative occupations existing in significant numbers in the regional and national economies during the period of adjudication, as illustrated by the testimony of an impartial vocational expert. Such representative unskilled occupations included silver wrapper, deli cutter/slicer, lamp shade assembler, and eyeglass polisher.

14.     The claimant was <u>not</u> under a "disability," as defined in the Social Security Act, at any time through his date last insured on December 31, 2004 (DIB) or through the date of this decision (SSI).

(Tr. 42-43) The Appeals Council affirmed the ALJ's decision (Tr. 7-9) and

thus, the hearing decision became the final decision of the Commissioner of

Social Security.

## **DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform a reduced range of light and sedentary work activity as identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). [1]

Plaintiff claims that the ALJ erred in failing to find him presumptively disabled under Listing 12.05C and, further, that the ALJ erred in failing to evaluate his mental impairment in the manner prescribed in 20 C.F.R. §§ 404.1520a and 416.920a. Because the ALJ failed to evaluate Hansell's severe mental impairment, that is, borderline intellectual functioning, in the manner prescribed by the Commissioner's own regulations, this Court need not reach the remaining issue raised by plaintiff. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

The remand of this case for further proceedings is mandated by *Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2005).[2] The Eleventh Circuit held in

---

[1] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987).

[2] *Moore* was decided some two plus months prior to the ALJ's decision in this case. *Compare* 405 F.3d at 1208 (April 12, 2005 decision) *with* Tr. 44 (ALJ's decision dated June 21, 2005).

*Moore* that "where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF, append it to the decision, or incorporate its mode of analysis into his findings and conclusions[,]" and that the "[f]ailure to do so requires remand." *Id.* at 1214 (citations omitted). The Commissioner's regulations specifically provide that the PRTF or functional analysis contained therein must be completed before an ALJ makes the determination about whether a mental impairment is severe or not severe. 20 C.F.R. § 404.1520a(d)(1) & (2) (2006) ("After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s). (1) If we rate the degree of your limitation in the first three functional areas [activities of daily living; social functioning; and concentration, persistence, or pace] as 'none' or 'mild' and 'none' in the fourth area [episodes of decompensation], we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities . . . . (2) If your mental impairment(s) is severe, we will then determine if it meets or is equivalent in severity to a listed mental disorder.").

Here, there can be no doubt that plaintiff has a colorable claim of a

mental impairment inasmuch as the ALJ specifically determined that one of Hansell's severe impairments is borderline intellectual functioning. *Compare* Tr. 42, Finding No. 4 (finding plaintiff's borderline intellectual functioning to be a severe impairment) *with Baxter v. Barnhart*, 165 Fed.Appx. 802, 804 (11th Cir. 2006) ("Here, the ALJ determined that Baxter had several severe impairments: the loss of Baxter's right eye, left shoulder pain, depression, and borderline intellectual functioning."). Accordingly, the ALJ in this case, like in *Moore*, was required to complete a PRTF or, otherwise, incorporate the PRTF's mode of analysis into his findings and conclusions. *Moore*, *supra,* 405 F.3d at 1214. Such mode of analysis, or special technique, "requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: 'activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.'" *Id*. at 1213, quoting 20 C.F.R. § 404.1520a(c)(3-4).

In this case, no PRTF was appended to the ALJ's decision nor did the ALJ incorporate into his decision the mode of analysis set forth in the regulations at §§ 404.1520a and 416.920a. (*See* Tr. 22-44) In fact, the ALJ makes no mention whatsoever of the pertinent regulations nor does he mention *Moore,* though that case was decided over two months prior to the hearing

8

decision in this case.

Although the defendant concedes, as she must, that the ALJ did not incorporate the special technique into his decision, she contends that the ALJ's incorporation of the mental functional limitations identified by Drs. John Davis and Patricia McCleary into his RFC assessment, more specifically the mild limitations in maintaining social functioning and activities of daily living and, at most, moderate limitation in maintaining concentration, persistence and pace (*compare* Tr. 42, Finding No. 7 *with* Tr. 579-580 & 594-595), should carry the day inasmuch as a remand of this case for the ALJ to simply document that plaintiff has never had an "episode of decompensation" would exalt form over substance. Such argument, however, is all but identical to the harmless error argument rejected in *Moore*, *see* 405 F.3d at 1214 ("On appeal, the Commissioner concedes (as she must) that the ALJ erred in not completing the PRTF or complying with its mode of analysis. The Commissioner argues, however, that remand is unnecessary as it would require no more than the ALJ's rote completion of the PRTF. We cannot agree. The ALJ failed to even analyze or document Moore['s] condition in two of the PRTF's functional areas: social functioning and prior episodes of decompensation. Because the ALJ's decision lacks consideration of these factors and their impact on his

ultimate conclusion as to Moore's RFC, we cannot even evaluate the Commissioner's contention that the ALJ's error was harmless."), and, therefore, her argument in this case must be rejected as well. As in *Moore*, this Court cannot evaluate the defendant's contention of harmless error given the ALJ's total failure to consider prior episodes of decompensation and their impact on his ultimate conclusion as to Hansell's RFC. The issue is further complicated in the instant case because accepting the defendant's argument would place this Court in the position of assuming not only what pertinent finding the ALJ would make but also what the testimony of the vocational expert would be in response to a hypothetical question which incorporated the degree of limitation identified by the ALJ in the area of prior episodes of decompensation. Indeed, the defendant's confidence that the ALJ in this case would find no prior episode of decompensation is not shared by the undersigned given plaintiff's hearing testimony that he stopped welding because he could not advance in this line of work without getting a specialized diploma and he was unable to read the materials required to pass vocational classes. (Tr. 649)

In light of the foregoing, the undersigned recommends that this case be remanded to the Commissioner of Social Security for further consideration in

light of *Moore v. Barnhart,* 405 F.3d 1208 (11th Cir. 2005).

## CONCLUSION

The Magistrate Judge recommends that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision.  The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 26th day of October, 2006.

                s/WILLIAM E. CASSADY
                **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.     *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE
